AYRES, Judge.
This action arose out of a collision which occurred on Louisiana Highway 117 near Bellwood in Natchitoches Parish, Louisiana, September 12, 1956, between a log truck driven by Arthur Joe Finn and a truck-tractor and lowboy combination which was parked across the highway. As a result of the accident Finn, plaintiff’s husband, was killed.
Upon th'e original trial of this cause in the district court a judgment was rendered in *817 plaintiff’s favor for $12,500. An appeal was perfected to this court, and upon the original hearing on that appeal the judgment was affirmed. A rehearing was granted and the cause was then remanded to the district court for the taking of such additional evidence as either plaintiff or defendant desired to offer, particularly as concerned the question of liability on defendant’s part and the question of quantum on the part of plaintiff. La.App., 100 So.2d 284. After trial on the remand there was judgment in plaintiff’s favor for $25,000, plus $708.70 for funeral expenses. The defendant has appealed.
The plaintiff contends that the parking of the tractor and lowboy across the highway was the sole proximate cause of the accident which resulted in Finn’s death. That this was the cause of the accident is denied by defendant, which contends that Finn’s own negligence in not maintaining proper control over his vehicle and in not maintaining a proper lookout was an independent intervening act of negligence constituting the sole proximate cause of the accident. Defendant contends, in the alternative, that in the aforesaid respects Finn was guilty of contributory negligence, barring recovery by plaintiff.
 The facts upon which these issues were based, as established by the original record, were detailed and discussed in our original opinion. Our review of the entire record, including the additional evidence introduced on the remand, has served only to confirm our opinion as to the correctness of the conclusions reached and expressed in our original opinion — that the negligence of defendant’s insured constituted a proximate cause of the accident and that Finn was free from fault and negligence in causing or contributing to the accident. We stated originally:
“One factual issue of controlling importance is involved in the determination of this case, that is, at what distance could and should Finn have been able to perceive the complete blocking of the highway by the exercise of reasonable care.”
In the determination of this issue, it was found that a clear view of the obstruction caused by the lowboy could not reasonably have been obtained beyond a point approximately 300 feet from the obstruction and that an approaching motorist could not have determined that the highway was completely blocked across its entire width until he actually began to enter into the reverse curve, which was some 270 feet from the point of impact.
In our latest review of the record, we find no basis justifying an alteration of these conclusions, which are supported by the photographs filed in evidence. Due to the curve in the highway and the position of the truck and lowboy parked therein, it appears that a motorist would not readily or reasonably discern that the lowboy was across the highway. The lowboy had the appearance of trailing the cab of the truck, which apparently was parked on the shoulder of the highway facing Finn’s approach.
We may, therefore, repeat that:
“After thorough consideration we are of the opinion that defendant has failed to sustain the burden of proof in establishing negligence or contributory negligence on the part of plaintiff’s decedent. At best, such a conclusion would be predicated only upon possibilities and is lacking in that certainty which must be required.”
This conclusion is reached notwithstanding the expert opinion that a log truck, loaded with 17 logs of an estimated weight of 18,000 pounds, could have been stopped in 214 feet had the trailer been equipped with brakes and in 284 feet if it were not so equipped. This expert opinion was based upon averages and would vary as the factors peculiar to a particular instance varied, such as the condition of the highway, the kind and character of its surface, and the degree of curve and decline. Under the facts and circumstances shown-to exist in *818 the instant case, the testimony offered is unconvincing and is insufficient to establish negligence on the part of the deceased, either as a proximate cause or as a contributing cause to the accident.
Appropriate here is the following observation made in Taylor v. Fidelity & Casualty Co. of New York, La.App., 55 So.2d 307, 310:
“It is argued that a driver approaching a blind hill or curve is under the compulsion to travel only at a speed which would permit him to bring his vehicle to a stop at a point where he can see beyond the crest of the hill or around the curve upon observing any nature of obstruction. The analogy is drawn between these highway conditions and those obstructions of the view resulting from fog, smoke or dust, which obscure the vision of drivers of vehicles upon the highways”,
and to quote further, we might appropriately state, too, that:
“A number of authorities have been cited by industrious counsel for both parties, which authorities we have carefully examined and, as a result, we are free to concede that support for the point which is urged may be drawn from some of the expressions used by our courts in a number of cases. However, we are impressed with the oft-reiterated pronouncement to the effect that each case involving ■this question-must be-determined upon the basis of the peculiar facts existing therein and this we think to be the only absolute and unyielding rule which can be applied.”
In the Taylor case this court also observed :
“As a matter of common experience the application of the principle contended would impose the obligation upon the driver of every vehicle upon our highways to negotiate hills and curves so slowly as to impede the flow of traffic beyond all reason. We are all familiar with the usual caution stripes which warn motorists against attempting to pass other- vehicles on approaches to hills and curves where the view is impeded, but these precautionary measures do not require a motorist to bring his speed below the legal and permissible limit. It has many times been stated that a motorist has the right to assume that his proper lane of traffic will be clear and unobstructed by traffic approaching from the opposite direction even in those instances where his vision is impaired by natural obstacles.
“We particularly point out that in the instant case no factors of fog, smoke or dust enter into contemplation. The gross negligence of the truck driver in blocking a main traveled highway at a point where simple observation could have disclosed the danger of such action, without taking any precaution by way of ány kind of signal, which would have warned approaching traffic of the danger, was unquestionably the proximate cause of the accident. In view of our finding that the plaintiff, Taylor, was not guilty of contributory negligence it follows that the negligence of the truck driver was the sole cause of the accident.”
To the same effect is the conclusion reached by this court in Cox v. Louisiana Department of Highways, La.App., 25 So.2d 824.
In Dowden v. State, La.App., 81 So.2d 48, 55, this court also stated:
“The drivers of the vehicles involved in these accidents had the right to presume and to act upon the presumption that the highway was safe' for the usual and ordinary traffic, even at night, and that they were not required to anticipate extraordinary dangers, impediments or ■ obstructions *819 to which their attention had not been directed. They had no reason to anticipate, nor could they have been charged with any legal obligation of anticipating, that the passage had been completely blocked by the employees of the Department of Highways in removing the bridge.”
Lastly for consideration is the question of quantum. At the time of his death Arthur Joe Finn was 55 years of age, with a life expectancy of 17.4 years. His average earnings could not be reasonably concluded to have been less than $100 per month. He and plaintiff owned and occupied a small home in Provencal. They had lived a happy and harmonious married life for 28 years. They were the parents of one son, 27 years of age, married and living in Shreveport. Since the husband’s death, the widow has lived alone.
Compensation on account of her husband’s death is sought by plaintiff for the loss of his earnings, for his pain and suffering after the accident and prior to his death, loss of love, affection and companionship, and for funeral expenses.
Plaintiff and her husband lived under a regime of community of acquets and gains. During the period of his life expectancy, at his rate of earnings, he could have been reasonably expected to earn approximately $20,000. Under the community existing between them, one-half of those earnings would have become the property of plaintiff. The present value of the plaintiff’s share in her husband’s prospective and expected earnings during his life expectancy would be approximately $6,500, which can reasonably be concluded the extent of plaintiff’s loss in her husband’s earnings and support. See Jones v. Kansas City Southern R. Co., 143 La. 307, 314, 78 So. 568; Marler v. State, La.App., 78 So.2d 26, 41.
For the pain, physical suffering and mental anguish of the deceased after the accident and prior to his death, plaintiff seeks $2,500. As the log truck approached the obstruction, Finn, obviously realizing the futility of his efforts to avoid a collision, jumped from his cab before the impact and was run over by the wheels of the heavily loaded truck, crushing his body. At least 45 minutes transpired before the arrival of an ambulance, into which he was placed and rushed toward a hospital, but en route the ambulance was delayed by a fiat tire. During all of this time he suffered pangs of death and excruciating pain. He remained conscious until momentarily before his death. He died before reaching medical assistance. This item appears not to be excessive.
Plaintiff is likewise entitled to recover compensation for the loss of her husband’s love, affection and companionship, so far as it is possible to compensate therefor. An award of $10,000 was approved in Marler v. State, supra, and such an award appears adequate here.
Expended for the funeral of the deceased was $708.70.
In support of her claim for an award of $25,000, exclusive of funeral expenses, plaintiff relies upon an award made by the trial court and approved by us in Perot v. United States Casualty Co., La.App., 98 So.2d 584. There it was stated that in fixing an award each case must necessarily stand on its own facts. Each of the items of damage claimed in the instant case has been considered and each has been fixed in accordance with the facts, circumstances and proof offered in connection therewith. These appear adequate to compensate for the losses sustained so far as such losses may be compensated financially-
For the reasons assigned, the judgment appealed is amended by reducing the award to $19,708.70 and, as thus amended, is affirmed, the plaintiff-appellee to pay the costs of the appeal.
Amended and affirmed.